**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 13-cv-01285-RM-KLM

DARRELL MILLER,

      Plaintiff,

v.

MARIA CONTRERAS-SWEET, Administrator, United States Small Business Administration,

      Defendant.

---

## ORDER

---

Plaintiff Darrell Miller ("Plaintiff" or "Miller") brings four claims against his employer, Defendant United States Small Business Administration ("Defendant" or "SBA") through its current Administrator[1], regarding his non-selection for a position as a SBA Human Resource Specialist.

For the reasons stated below, the Court:  DENIES Plaintiff's Motion for Partial Summary Judgment (ECF No. 27); GRANTS Defendant's Motion for Summary Judgment (ECF No. 31); and DENIES Plaintiff's Motion *in Limine* (ECF No. 35).

## I.    LEGAL STANDARDS

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569-

---

[1] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Maria Contreras-Sweet is substituted for Karen Mills as Defendant in this action.

70 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial.  *See 1-800-Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

Only admissible evidence may be considered when ruling on a motion for summary judgment.  *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (citation omitted) (holding that hearsay evidence is not acceptable in opposing a summary judgment motion); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Affidavits must be based on personal knowledge and must set forth facts that would be admissible evidence at trial.  *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted).  "Conclusory and self-serving affidavits are not sufficient." *Id.* The Court will not consider statements of fact, or rebuttals thereto, which are not material or are

not supported by competent evidence.  Fed. R. Civ. P. 56(c)(1)(A), 56(e)(2), 56(e)(3).  "[O]n a

motion for summary judgment, it is the responding party's burden to ensure that the factual

dispute is portrayed with particularity, without depending on the trial court to conduct its own

search of the record."  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal

quotation and citation omitted).  The Court is "not obligated to comb the record in order to make

[Plaintiff's] arguments for [him]."  *See Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199

(10th Cir. 2000).  Further, Local Rule 7.1(D) provides that "[e]very citation in a motion,

response or reply shall include the specific page or statutory subsection to which reference is

made."  D.C. Colo. L. Civ. R. 7.1(D).

## II.     PROCEDURAL BACKGROUND

On May 17, 2013, Plaintiff filed a four-count[2] Complaint alleging that Defendant

violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 *et seq.*, as

amended, 42 U.S.C. § 1981 ("Section 1981") and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621-34 (2012).  Defendant allegedly violated Plaintiff's rights by

discriminating against him based on his:  (1) race and color in violation of Title VII and Section

1981 (ECF No. 2 at 3-4); (2) gender in violation of Title VII (ECF No. 2 at 4-5); and (3) age in

violation of the ADEA (ECF No. 2 at 5-7), as well as by retaliating[3] against him for his having

---

[2] In Claim Four, Plaintiff's Complaint alleges that Miller "suffered a hostile work environment . . . as a direct cause of the retaliation. . . ." (ECF No. 2 at ¶ 44.)  Because Plaintiff makes this allegation under the heading "Retaliation" and fails to develop facts which establish a subjectively and objectively severe hostile work environment, the Court treats his allegations of a "hostile work environment" and "retaliation" as one and the same under the retaliation rubric.  *See Gilkey v. Protection One Alarm Monitoring, Inc.*, 517 Fed. App'x 627, 627 n.1 (10th Cir. 2013) (treating a plaintiff's harassment and hostile work environment claim as only one claim); *see Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (setting forth the elements necessary to establish a hostile work environment claim under Title VII).

[3] Plaintiff's Complaint Claim Four does not identify under which statute relief is sought for Defendant's alleged retaliatory acts.  (*See generally* ECF No. 2 at 7-8.)  The Court presumes Plaintiff seeks relief under Title VII, 42 U.S.C. § 2000e-3(a).

engaged in protected activity (ECF No. 2 at 7-8).

On March 6, 2014, Plaintiff moved for partial summary judgment.  (ECF No. 27.)

Plaintiff "seeks a partial summary judgment, namely, that the claims as defined in the

[C]omplaint and admitted to in the Final [Small Business Administration] Agency Decision,

(FAD) be reduced to a judgment and that this [C]ourt go forward on the [d]amages portion of the

suit."  (ECF No. 27 at 1.)

On March 14, 2014, Defendant moved for summary judgment on each of Plaintiff's

claims.  (ECF No. 31.)

On April 18, 2014, Plaintiff moved to prevent the Court from considering certain

evidence submitted by Defendant in support of its motion for summary judgment.  (ECF No. 35.)

## III.  UNDISPUTED AND MATERIAL FACTUAL BACKGROUND[4]

The facts as recited below are based on adequate citations to the record which would be

admissible at trial or based on uncontested averments in the parties' respective filings.  The facts

are recited in a light most favorable to the non-moving party.  Facts denied on the basis of "no

personal knowledge" are insufficient to create a disputed material fact because it is the obligation

of the non-moving party to designate evidence which contradicts the purportedly contested fact.

Fed. R. Civ. P. 56(e)(2), 56(e)(3); *see 1-800-Contacts,* 722 F.3d at 1242.

Plaintiff is a Caucasian, white male.  (*Compare* ECF No. 31 at ¶ 11 *with* ECF No. 36 at ¶

11 (identifying that the parties do not dispute Plaintiff's race, color, and gender).)  At the time of

his non-selection to the Human Resource Specialist position, Plaintiff was sixty (60) years old.

---

[4] In his Motion for Partial Summary Judgment, Plaintiff includes a section titled "History of the Matter."  (ECF No. 27 at 2-5.)  That section is largely devoid of citations to the record and fails to conform to the Court's practice standards regarding statements of material fact.  Practice Standards (eff. May 2013) at §§ IV.B.2; IV.L.3.b.  Further, much of the information contained in Plaintiff's "History of the Matter" is largely irrelevant to determining whether either party is entitled to summary judgment on Plaintiff's Complaint.

(*Compare* ECF No. 31 at ¶ 11 *with* ECF No. 36 at ¶ 11 (identifying that the parties do not dispute Plaintiff's age at the time of non-selection).)  Defendant currently employs Plaintiff as a Personnel and Payroll Specialist (GS-09, Step 6) in its Office of Human Resource Solutions (formerly known as the Office of Human Capital Management ("OHCM")), Personnel Services Division located in Denver, Colorado.  (ECF 31-1, Dep. of Darrel Miller at 23:1-6.)  Defendant has employed Plaintiff as a Personnel and Payroll Specialist since August 2003.  (*Compare* ECF No. 27 at ¶ A.2 *with* ECF No. 32 at ¶ A.2.)

On April 22, 2011, the SBA did not select Plaintiff for the position of Human Resources Specialist announced under Job Announcement No. 11D-154-BC.  (ECF No. 31-3 at ¶ 64, Decl. of Paul Gutierrez.)  Three individuals participated in evaluating and selecting the Human Resources Specialist Position candidates.  These individuals were Paul Gutierrez ("Gutierrez"), Joseph Eitel ("Eitel"), and David Robbins ("Robbins").  (ECF No. 31-3 at ¶¶ 33, 64; ECF No. 31-4 at ¶¶ 25 & 48, Decl. of Joseph Eitel.)  On April 28, 2011, Gutierrez communicated that Plaintiff was not selected for the Human Resource Specialist position.  (ECF No. 31-3 at ¶ 65; ECF No. 31-19, Apr. 28, 2011 e-mail from Paul Gutierrez.)

Gutierrez had been Plaintiff's immediate supervisor from approximately June 2002 until the end of February 2011.  (ECF No. 31-3 at ¶ 10.)  Eitel served as Plaintiff's "team lead" from June 2002 to February 2011 and supervised Plaintiff on a day-to-day basis during that time.  (ECF No. 31-4 at ¶¶ 10, 12.)  For fiscal years 2003, 2004, 2005, and 2006, Plaintiff received satisfactory annual performance evaluations from Gutierrez.  (ECF No. 31-3 at ¶ 21.)  In 2005, Gutierrez temporarily detailed Plaintiff to assist Human Resource Specialists.  (ECF No. 31-3 at ¶ 14.)  This temporary detail to assist Human Resource Specialists was stopped because Plaintiff

unsuccessfully fulfilled his duties.  (ECF No. 31-3 at ¶ 14.)  Gutierrez and Eitel believe

Plaintiff's work performance in his position began deteriorating in fiscal year 2008.  (ECF No.

31-3 at ¶ 23; ECF No. 31-4 at ¶ 18.)  For fiscal year 2008, Plaintiff received an annual

performance review from Gutierrez with a rating of "2" or "below expectations" in the category

of "Technical Work."  (ECF No. 31-24, Miller 2008 Annual Performance Review.)  For fiscal

years 2009 and 2010, Plaintiff received annual performance reviews from Gutierrez assigning

him an overall rating of "2" or "below expectations."  (ECF No. 31-3 at ¶¶ 25, 27; ECF No. 31-

25, Miller 2009 Annual Performance Review; ECF No. 31-26, Miller 2010 Annual Performance

Review.)  In 2010, Gutierrez informed Plaintiff that Plaintiff's work was deficient and required

substantive review.  (ECF No. 31-3 at ¶ 28; ECF No. 31-27, July 20, 2010 Poor Performance

Letter.)  Due to Plaintiff's poor work performance in 2010, Gutierrez withheld Plaintiff's within-

grade pay increase.  (ECF No. 31-3 at ¶ 31; ECF No. 31-29, Aug. 13, 2010 Denial Letter.)

Gutierrez also supervised Plaintiff's co-worker Carrie Marez ("Marez") who was hired as

a Personnel and Payroll Specialist, GS-09, in June 2010.  (ECF No. 31-3 at ¶¶ 60, 67.)  Eitel

served as Marez's "team lead."  *Id*.  Marez is thirty-nine years old and is a Hispanic, brown

female.  (*Compare* ECF No. 27 at ¶¶ C.1(a), E.1(b) *with* ECF No. 32 at ¶¶ C.1(a), E.1(b)

(identifying that the parties do not dispute this fact).)  Marez received an overall performance

rating of 4 ("Exceeds Expectations") on her 2010 annual performance review.  (ECF No. 31-3 at

¶¶ 68-70; ECF No. 31-4 at ¶¶50-52; ECF No. 31-22, Marez 2010 Performance Review.)

Previously, Marez worked at the U.S. Department of Energy ("DOE") where her duties involved

human resource tasks, including staffing, recruitment, and new employee set-up issues.  (ECF

No. 31-3 at ¶¶ 71, 73; ECF No. 31-21, Marez Resume.)

6

On March 30, 2011, Gutierrez sent an e-mail announcing a vacancy for the Human Resource Specialist position to Plaintiff and his co-workers, Lisa Lawrence ("Lawrence") and Marez, who were also Personnel and Payroll Specialists (GS-09) in OHCM Denver.  (ECF No. 31-7, Mar. 30, 2011 e-mail.)  Only Marez and Plaintiff applied for the position.  (ECF No. 31-3 at ¶ 42.)  The SBA designed the Human Resource Specialist position to be a "GS-09 developmental position in the areas of staffing and recruitment," which meant that the selectee would start at the GS-09 level and "would be expected to learn and develop in order to progress to higher GS-levels," with promotion potential up to GS-13.  (ECF No. 31-3 at ¶ 35; ECF No. 31-8, Vacancy Announcement; ECF No. 31-15, Apr. 20, 2011 e-mail from Gutierrez to Robbins.)  The selectors for the Human Resource Specialist position considered "a candidate's ability to learn new skills, efficiency, enthusiasm, attention to customer service, and ability to communicate effectively and to build and manage relationships" among the key selection criteria.  (ECF No. 31-3 at ¶ 37; ECF No. 31-4 at ¶ 28.)

On April 20, 2011, Gutierrez and Eitel interviewed both Plaintiff and Marez.  (ECF No. 31-3 at ¶ 46.)  Gutierrez and Eitel considered the interview an important component of the selection process and hiring decision for the Human Resource Specialist position.  (ECF No. 31-3 at ¶¶ 47, 80; ECF No. 31-4 ¶ 32.)  Of both applicants, Gutierrez and Eitel asked a series of seven pre-determined questions.  (ECF No. 31-3 at ¶¶ 48, 49, 59; ECF No. 31-4 at ¶¶ 33, 34, 42; ECF No. 31-10, Eitel Interview Notes for Miller; ECF No. 31-11, Eitel Interview Notes for Marez; ECF No. 31-12, Gutierrez Interview Notes for Miller; ECF No. 31-13, Gutierrez

Interview Notes for Marez.)[5]  Both interviewers took hand-written notes recording the applicants' responses to the extent feasible which is part of each interviewer's standard practices. (ECF No. 31-3 at ¶¶ 48, 49; ECF No. 31-4 at ¶¶ 33, 34; ECF No. 31-10; ECF No. 31-11; ECF No. 31-12; ECF No. 31-13.)  Gutierrez and Eitel believed that Plaintiff did not perform well during the interview.  (ECF No. 31-3 ¶ 52; ECF No. 31-4 at ¶ 36.)  Gutierrez and Eitel believed that Plaintiff's responses to the interview questions failed to demonstrate that he understood the duties and goals for the Human Resource Specialist position, and that he appeared not to be prepared for the interview.  (ECF No. 31-3 at ¶¶ 54, 57, 80; ECF No. 31-4 at ¶¶ 38-40.)  In contrast, Gutierrez and Eitel believed that Marez, during her interview, demonstrated an understanding of the duties and goals for the Human Resource Specialist position.  (ECF No. 31-3 at ¶ 60; ECF No. 31-4 at ¶ 43.)

On April 22, 2011, David Robbins, SBA's Associate Administrator for Management and Administration, conducted second round telephone interviews of both Plaintiff and Marez. (*Compare* ECF No. 31 at ¶ 48 *with* ECF No. 36 at ¶ 48 (identifying that the parties do not dispute this fact).)  Subsequent to Robbins' interviewing both candidates, Robbins conferred with Gutierrez and Eitel concerning which candidate to select for the position.  (ECF No. 31-3 at ¶ 64; ECF No. 31-4 at ¶ 48.)  Robbins, Gutierrez, and Eitel agreed that Marez was the superior candidate.  (ECF No. 31-3 at ¶ 64; ECF No. 31-4 at ¶ 48.)  On April 28, 2011, Gutierrez communicated that Plaintiff was not selected for the Human Resource Specialist position.  (ECF No. 31-3 at ¶ 65; ECF No. 31-19.)  Gutierrez believed that Marez's prior DOE experience was applicable to the duties and goals of the Human Resource Specialist position for which she was

---

[5] The Court notes that both Gutierrez and Eitel declared that the notes attached as Exhibit K (ECF No. 31-11) to Defendant's Motion for Summary Judgment are their own.  (ECF No. 31-3 at ¶ 59; ECF No. 31-4 at ¶ 33.)

selected.  (ECF No. 31-3 at ¶ 74.)

Neither Gutierrez nor Eitel made any comments during the interview concerning Plaintiff's race, gender, age, or prior equal employment opportunity activity.  (ECF No. 31-1, Miller Dep. at 114:9-18.)

Gutierrez and Eitel have been involved in hiring or promoting eleven other individuals within the SBA.  (ECF No. 31-3 at ¶¶ 76-77; ECF No. 31-4 at ¶¶ 54-56.)  The gender, racial, and age composition of these hires or promotes is:  three males; six Caucasians/whites; three Hispanics; two African-Americans; and five over the age of 40.[6]  (ECF No. 31-3 at ¶ 76; ECF No. 31-4 at ¶ 54.)

On February 5, 2010, Plaintiff filed a formal complaint with SBA's Equal Employment Opportunity and Civil Rights Compliance Office regarding age and physical disability harassment and discrimination.  (*Compare* ECF No. 27 at ¶ B.1 *with* ECF No. 32 at ¶ B.1.)  On August 30, 2010, Plaintiff filed another formal complaint with SBA's Equal Employment Opportunity and Civil Rights Compliance Office regarding harassment and discrimination based on age, sex, and retaliation for his having engaged in prior protected activity.  (*Compare* ECF No. 27 at ¶ B.2 *with* ECF No. 32 at ¶ B.2.)  Based on the SBA's failure to select Plaintiff for the Human Resource Specialist position, on July 20, 2011, Plaintiff filed a formal complaint with SBA's Equal Employment and Civil Rights Compliance Office regarding discrimination based on his race, color, sex, age, and in retaliation for having engaged in protected activity.  (*Compare* ECF No. 27 at ¶ F *with* ECF No. 32 at ¶ F.)  The SBA issued a "Final Agency Decision" concerning Plaintiff's July, 20, 2011 complaint.  (ECF No. 27-1 at 1-13, SBA Final Agency

---

[6] Plaintiff did not proffer admissible evidence to rebut the genders, races, or ages of the individuals identified by the Defendant.  Further, Plaintiff did not contest the declarant's personal knowledge of the individuals' genders, races, or ages.

Decision mailed on March 21, 2013.)

## IV. ANALYSIS

### A.      Plaintiff's Motion for Partial Summary Judgment

The Court denies Plaintiff's "Motion for Partial Summary Judgment" because Plaintiff fails to establish that he is entitled to judgment as a matter of law based on the SAB's Final Agency Decision. *See Timmons v. White*, 314 F.3d 1229, 1233-38 (10th Cir. 2003).

First, Plaintiff did not sue to enforce the SBA Final Agency Decision. Plaintiff's Complaint contains no allegation that Defendant has failed to comply with the SAB's Final Agency Decision's ordered remedies. Plaintiff's Complaint claims four bases for the relief which he seeks:  (1) race/color discrimination; (2) gender discrimination; (3) age discrimination; and (4) retaliation for having engaged in protected activity. (ECF No. 2 at 3-8.)  Because Plaintiff brought a discrimination action and not an action to enforce the SAB's alleged failure to comply with the SAB's Final Agency Decision's remedies, the Court is to conduct a *de novo* trial on Plaintiff's claims. *See Timmons*, 314 F.3d at 1233.

Second, alternatively, assuming Plaintiff seeks summary judgment on his claims based on the SAB's Final Agency Decision[7], that document is not determinative of the issues. *Timmons* held that when an individual brings suit under 42 U.S.C. §§ 2000e-5, 2000e-16(c), as Plaintiff

_____

[7] Plaintiff argues that the SAB's Final Agency Decision constitutes direct evidence of discrimination. (ECF No. 36 at 21-22.) Plaintiff is mistaken in his argument. *See E.E.O.C. v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996); Black's Law Dictionary 636 (9th ed. 2004) (defining direct evidence as evidence "that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption"). To constitute direct evidence of discrimination, the SAB Final Agency Decision requires the inference that the statements contained within the document are accurate. Thus, the Court is left with hearsay within a document upon which the Plaintiff relies. And the SAB Final Agency Decision is not an admission by a party opponent because the Tenth Circuit Court of Appeals has held that an employer is not bound by a prior adverse finding by an administrative agency. *Timmons*, 314 F.3d at 1233. The Court notes that because Defendant does not dispute the authenticity of the SAB Final Agency Decision submitted by Plaintiff (ECF No. 27-1 at 1-13), the Court presumes it is authenticate and would be admissible at trial under either Rule 803(6) or 803(8) of the Federal Rules of Evidence. *See Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976).

has here (in addition to the ADEA's parallel provision, 29 U.S.C. § 623(a)), "a federal employer

is not bound by a prior adverse finding by the [administrative agency]." *Timmons*, 314 F.3d at

1233.  As *Timmons* held, *de novo* review means that the Court's inquiry is "not limited to or

constricted by the administrative record, nor is any deference due the agency's conclusion."

*Timmons*, 314 F.3d at 1233.

### B.   Defendant's Motion for Summary Judgment

The Court grants Defendant's Motion for Summary Judgment because it has established

it is entitled to judgment as a matter of law and there is no genuine dispute as to any material

fact.

### 1.   Claims One and Two:  Race, Color, and Gender Discrimination

In this case, Plaintiff brings "reverse discrimination claims," alleging[8], among other

bases, that he was not selected for the Human Resource Specialist position on account of his race

(Caucasian), color (white), and gender (male).  (ECF No. 2 at ¶¶ 14, 15, 22, 25.)  In a non-

reverse race discrimination case, in the absence of direct evidence of discrimination[9], the

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), burden-shifting method is

applicable.  The Tenth Circuit Court of Appeals has modified this burden-shifting analysis in the

context of reverse-discrimination claims wherein the plaintiff is not a member of a historically

discriminated against group.  *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).

---

[8] Plaintiff brings his race and color claims under Title VII and Section 1981.  The same analysis applies to Title VII and Section 1981 claims.  *See Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000); *Foreman v. Western Freightways, LLC*, 958 F. Supp. 2d 1270, 1275 (D. Colo. 2013).

[9] Despite Plaintiff's protestation to the contrary (ECF No. 36 at 14), Plaintiff has not presented any evidence of direct race, color, or gender discrimination.  *See supra*, Footnote 7.  Further, the SAB Final Agency Decision does not create a disputed material fact because the parties' statements of fact and responses thereto fail to establish a genuine dispute of material fact as to Plaintiff's race, color, or gender claims.  *See Simms v. Oklahoma*, 165 F.3d 1321, 1331 (10th Cir. 1999), *abrogated on other grounds as recognized by Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014).

Here, Plaintiff is not a member a historically discriminated group. Rather, Plaintiff is Caucasian, white, and male. Thus, the Tenth Circuit instructs that Plaintiff's burden to establish a *prima facie* case "requires a stronger showing." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (citing *Notari*, 971 F.2d at 589).

In non-reverse discrimination claims, the applicable *McDonnell-Douglas* burden-shifting scheme requires a plaintiff to first establish a *prima facie* case by showing that (i) he belongs to a protected category; (ii) he suffered an adverse employment action; and (iii) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citation omitted). In a reverse-discrimination claim, the first element of establishing a *prima facie* case is modified and the plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Argo*, 452 F.3d at 1201 (quoting *Notari*, 971 F.2d at 589). If the plaintiff can make this showing along with the other three *prima facie* elements, the remaining elements of the *McDonnell Douglas* burden-shifting method are applied which allow for the defendant to provide a legitimate, non-discriminatory reason for its action which then shifts the burden to the plaintiff to establish that the proffered reason is merely a pretext for discrimination. *Mattioda v. White*, 323 F.3d 1288, 1291 (10th Cir. 2003).

Alternatively, in a reverse-discrimination claim, a plaintiff can demonstrate discrimination without reliance on the modified *McDonnell Douglas* analysis by presenting either direct evidence or indirect evidence sufficient "to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred. *Notari*, 971 F.2d at 590.

a.    *Plaintiff Fails to Establish "Background Circumstances"*

Defendant has a history of hiring or promoting individuals of diverse races, colors, and genders.  (ECF No. 31-20.)  From 2008 through 2011, Defendant hired or promoted eleven individuals including:  three males, six Caucasian/whites, three Hispanics; and two African-Americans.  (ECF No. 31-3 at ¶¶ 76-78; ECF No. 31-4 at ¶¶ 54-56.)  Plaintiff fails to present any evidence of "background circumstances" which indicate that the SBA discriminates against non-protected classifications.  Plaintiff merely argues that Defendant's assessment of its hiring and promotion history is "inaccurate[] and out of context."  (ECF No. 36 at 15.)  But Plaintiff fails to present any admissible evidence which would accurately reflect Defendant's hiring and promotion history.  Plaintiff cites to an exhibit which purports to be his analysis of Defendant's hiring and promotion history.  (ECF No. 36-6 at 2; ECF No. 36-7 at 2.)  Plaintiff, however, fails to cite how he has personal knowledge of this information.  Regardless, the Court has reviewed the submissions by both parties and does not find that Plaintiff's submission creates a disputed material fact.  Plaintiff appears to argue that five individuals who SBA hired or promoted are "of color"[10].  (ECF No. 36-7 at 2.)  Assuming five individuals are "of color," this fact undermines Plaintiff's race claim because this fact implies that six individuals who are not of color, *i.e.*, white, were hired or promoted.  Plaintiff also appears to argue that the SBA hired or promoted eight individuals who are female as opposed to only three males.  (ECF No. 36-7 at 2.)  But Plaintiff fails to provide context to this alleged statistically significant difference which would eliminate non-discriminatory variables and allow the Court to infer reverse discrimination.  *See Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011) (holding that to be "probative of

---

[10] Plaintiff fails to define "of color."  Thus, Plaintiff has collapsed his race and color claims into a single claim.

discrimination, statistical evidence must 'eliminate nondiscriminatory explanations for the disparity'") (quoting *Tuner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1147 (10th Cir. 2009)).

         b.     *Plaintiff Fails to Show That "But For" His Race and Color, He Would Have Been Selected For the Human Resource Specialist Position*

Under the alternative *prima facie* approach to establishing a reverse-discrimination claim, Plaintiff fails to establish that "but for" his race, color, or gender he would have been selected for the Human Resource Specialist position. Plaintiff fails to present either indirect or direct evidence demonstrating "a reasonable inference that but for [his] status[es] the challenged decision would not have occurred." *See Notari*, 971 F.2d at 590.

In terms of indirect evidence, Plaintiff's statistical analysis[11] (ECF No. 36 at 17-18) does not permit the Court to infer that it is only because of his race or color or age that Defendant discriminated against him. At the outset, in his comparison, Plaintiff is confusing apples for oranges. (*See* ECF No. 36-13.) Plaintiff attempts to compare "Government Wide Employment of Workers in General Schedule and Related (GSR) Pay Systems" with "SBA-OHRS Hires." (ECF No. 36-13.) Those currently "employed" are not comparable to those "hired" because the comparison does not reveal whether the proportion hired leads to a workforce composition which deviates from the government-wide standards. Further, Plaintiff does not address potentially confounding variables which preclude the Court from drawing the "but for" inference with respect to Plaintiff's race, color, or gender claims. *See Luster*, 667 F.3d at 1094. For example, Plaintiff does not address the color, racial, or gender composition of: (1) the SBA specifically

---

[11] The Court is also mindful of Plaintiff's failure to proffer personal knowledge as to the statistics involved in his analysis. Therefore, additionally, the Court finds that Plaintiff's Exhibit 13 (ECF No. 36-13) in response to Defendant's Motion for Summary Judgment is inadmissible hearsay.

(as opposed to that of the entire government); (2) the SBA's Denver office; (3) the SBA's

OHCM; or (4) the promotional or hiring pool.

Due to the dearth of "specific facts" supporting the "but for" inference, Plaintiff fails to

establish the "but for" *prima facie* case of reverse discrimination on the bases of his race, color,

or age.

    c.    *Plaintiff Fails to Rebut Defendant's Legitimate, Non-Discriminatory*
    *Reasons for its Decision Not to Promote Him as Pretext*

Although the Court holds that Plaintiff cannot establish a *prima facie* case of

discrimination on the bases of his race, color, or gender, the Court additionally holds that

Plaintiff's reverse-discrimination claims fail because Defendant presents legitimate, non-

discriminatory reasons for its decision not to hire Plaintiff for the Human Resource Specialist

position and Plaintiff fails to show that these reasons are pretext for discrimination.  *See Argo*,

452 F.3d at 1202-03.  In analyzing a failure to hire case, the "relevant inquiry is not whether [the

employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly

believed those reasons and acted in good faith upon those beliefs."  *Stover v. Martinez*, 382 F.3d

1064, 1076 (10th Cir. 2004) (internal citation omitted).

In this case, Defendant selected Marez based upon her qualifications for the position, her

work performance, and her performance during the interview for the Human Resource Specialist

position.  (ECF No. 31-3 at ¶¶ 60, 74; ECF No. 31-4 at ¶ 43.)  The three individuals involved in

the selection process each agreed that Marez was the better qualified candidate for the position.

(ECF No. 31-3 at ¶ 64; ECF No. 31-4 at ¶ 48.)  In contrast, Defendant believed that Plaintiff was

not suited for the position due to his deteriorating work performance and his poor performance

during the interview for the Human Resource Specialist position.  (ECF No. 31-3 at ¶¶ 23, 52; ECF No. 31-4 at ¶¶ 18, 36.)

Plaintiff fails to demonstrate that Defendant's justifications are pretext for discrimination. A party may show pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011) (internal quotation omitted).  Pretext may also be shown by providing direct evidence discrediting the proffered rational, or by showing that the plaintiff was treated differently from others similarly situated. *Id*.  But "mere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 864-65 (10th Cir. 2007) (internal quotation omitted).  Plaintiff fails to persuade the Court that Defendants' proffered reasons are not the true reasons either directly by showing a discriminatory reason more likely motivated it or indirectly by challenging Defendants' reasons as unworthy of credence. *See McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981)).

First, Plaintiff's subjective opinion that Marez "was neither highly nor better qualified than Plaintiff" carries no weight before the Court. *See Johnson v. N.T.I.*, 944 F. Supp. 839, 841 (D. Colo. 1996) (holding that absent additional specific evidence, a plaintiff's "conclusory allegations and subjective beliefs" were insufficient to establish pretext).  Further, Plaintiff engages in a "strict comparison of [the two candidates based on their respective] experience" at

the SBA.  (ECF No. 36 at 18-19.)  Plaintiff, however, fails to identify that experience, or even more specifically—SBA experience—was Defendant's sole selection criterion.  Second, contrary to Plaintiff's arguments (ECF No. 36 at 19), Defendant's multiple justifications, identified above, are not inconsistent for why it did not select him for the Human Resource Specialist position.  Rather, they simply reinforce each other as none contradicts the other or indicates a change in position.  Third, Plaintiff's attempt to imply pretext by Defendant's changing Marez's position description is not convincing because the change was made to an element of the position description for which neither Plaintiff nor Marez had experience, *i.e.*, "employee relations and labor relations."  (ECF No. 36-15; ECF No. 31-4 at ¶¶ 5-11; *see* ECF No. 31-3 at ¶¶ 43, 71; ECF No. 31-2, Miller Resume; *see* ECF No. 31-21.)

## 2.   Claim Three:  Age Discrimination

Under the ADEA, a plaintiff must show by a preponderance of the evidence that age was the "but-for" cause for the employer's adverse decision.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that a "mixed motives" claim is unavailable under the ADEA which is in contrast to Title VII).  "Unlike Title VII . . . 'the ADEA's text does not provide that plaintiff may establish discrimination by showing that age was simply a motivating factor.'"  *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 949 (10th Cir. 2011).  To prevail on an ADEA claim, it is "the employee's burden to show that age was the 'but for' cause of the action."  *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1193 (10th Cir. 2010) (citation omitted).  While Plaintiff is not required to show that age solely motivated Defendant, he must show that "age was the factor that made a difference."  *See Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (quotation omitted).

Similar to his race, color, and gender claims, Plaintiff presents no direct evidence[12] that age was the factor that made a difference in his non-selection for the Human Resource Specialist position. *See E.E.OC. v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996); *see also* Black's Law Dictionary 636 (9th ed. 2004) (defining direct evidence as that "based on personal knowledge or observation and that, if true, proves a fact without inference or presumption"). As Plaintiff fails to present direct evidence of age discrimination, he must rely on the *McDonnell Douglas* burden-shifting scheme via indirect evidence. *See Jones*, 617 F.3d at 1277.

Defendant assumes that Plaintiff can establish a *prima facie* age discrimination case; therefore it relies on its justifications for not hiring Plaintiff to the Human Resource Specialist position. (ECF No. 31 at 27.) Defendant's legitimate and non-discriminatory justifications for hiring Marez as opposed to Plaintiff for the position are equally applicable in this context. (*See supra* IV.B.1.c.) Plaintiff, in an attempt to show that Defendant's reasons are pretext appears to argue that six individuals who SBA hired or promoted are "younger" than he. (ECF No. 36-7 at 2.) Similarly, Plaintiff selectively cites that "100% of selections by Mr. Gutierrez were under 55 years of age, inferring age discrimination is a factor in his hiring decisions." (ECF No. 36 at 17-18.) Because these facts do not address the reasons upon which Defendant relies for not selecting Plaintiff for the Human Resource Specialist position nor do they show that a discriminatory reason motivated it, the Court is not convinced that Plaintiff's self-defined classifications of "younger" or under "55" rebut Defendant's legitimate business justifications or create a triable issue in this regard. *See also* 29 U.S.C. § 631(b) (defining the protected age

---

[12] *See* supra, Footnote 7. Further, the SAB Final Agency Decision does not create a disputed material fact because the parties' statements of fact and responses thereto fail to establish a genuine dispute of material fact as to Plaintiff's age claim. *See Simms*, 165 F.3d at 1331, *abrogated on other grounds as recognized by Eisenhour*, 744 F.3d at 1227.

category as forty (40) and above); *but see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S.

308, 311-12 (1996) (holding that age-discrimination plaintiffs need not show disparate treatment

as compared to co-workers outside the protected class).  Plaintiff also argues that Gutierrez and

Eitel's statements regarding a candidate's "enthusiasm to learn," that the position was focused on

"learn[ing]," and that "prior government work experience" was not a critical selection criterion

demonstrate age discrimination.  (ECF No. 36 at 18.)  These comments, however, do not refer to

Plaintiff specifically nor do they refer to a candidate's age and thus are insufficient to create an

inference of age discrimination.  *See Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369

(10th Cir. 1997).  Further, Plaintiff attempts to imply pretext by pointing to the disparity in work-

experience years between him and Marez in relation to Gutierrez's assessment of her skills.

(ECF No. 36 at 18.)  This argument is not persuasive because years of experience do not

necessarily entail expertise at a particular function.  Further, the evidence indicates that at the

time of selection, Defendant evaluated Marez's work performance more highly than that of

Plaintiff.  (ECF No. 31-3 at ¶¶ 23, 52; ECF No. 31-4 at ¶¶ 18, 36.)

3.     Claim Four:  Retaliation for Having Engaged in Protected Conduct

Without direct evidence of retaliation,[13] Plaintiff must rely on the *McDonnell Douglas* to

establish his retaliation claim.  *See Green v. Donahoe*, 760 F.3d 1135, 1146 (10th Cir. 2014)

(citation omitted).  To establish a *prima facie* case of retaliation, the plaintiff must show:  (1) he

engaged in a protected activity; (2) a reasonable employee would have found the challenged

action materially adverse; and (3) a causal connection existed between the protected activity and

the materially adverse action.  *Argo*, 452 F.3d at 1202 (citations omitted).  If the plaintiff satisfies

---

[13] *See supra*, Footnote 7.

the *prima facie* requirement, then the burden shifts to the defendant to provide a legitimate, non-retaliatory basis for its action. *Id*. If the defendant meets its burden, then the plaintiff must offer evidence to show that retaliation was a determinative factor in the employment decision or that the defendant's non-retaliatory basis was merely pretext. *Id*. at 1202-03.

In this matter, the parties do not dispute the first two elements of Plaintiff's *prima facie* case. Thus, at issue in establishing Plaintiff's *prima facie* case is only whether there exists a causal connection between Plaintiff's protected activity and his non-selection for the Human Resource Specialist position. The Tenth Circuit has held that "[u]nless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (Title VII context). In measuring temporal proximity, the Tenth Circuit has instructed that time is measured from the date the employee files or asserts, either formally or informally, his complaint of discrimination. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007). The Tenth Circuit has also instructed that four months between the protected activity and the adverse employment action is too long to infer a causal connection. *Proctor*, 502 F.3d at 1208.

In this case, Plaintiff filed his first internal complaint regarding Defendant's alleged discriminatory practices on February 5. 2010. (ECF No. 27 at ¶ B.1.) Plaintiff filed his second internal complaint regarding Defendant's alleged discriminatory practices on August 30, 2010. (ECF No. 27 at ¶ B.2.) The challenged adverse employment action occurred on April 22, 2011. (ECF No. 31-3 at ¶ 64.) Nearly eight months passed from Plaintiff's most-recent engagement in protected activity to the adverse-employment action. Therefore, no temporal proximity exists

between the protected activity and the adverse-employment action.  *See Proctor*, 502 F.3d at 1208-09.

Plaintiff's attempt to distinguish *Proctor* (ECF No. 36 at 23) is not persuasive.  Plaintiff's theory that continuous engagement in the interactive process[14] designed to administratively address discrimination complaints somehow extends the time period in which he was engaged in protected conduct finds no support in the statutory scheme.  *See Fitzpatrick v. Norris Dullea Co.*, Case No. 05-CV-00933, 2005 WL 2293635, *3 (D. Colo. Sept. 19, 2005) (holding that Title VII's retaliation provisions "are not triggered unless the plaintiff engages in some protected activity" and that the initial protest against the employer's conduct "did not establish [] ongoing protected activity sufficient to give rise to an inference of the required causal connection).

### C.    Plaintiff's Motion *in Limine*

The Court denies Plaintiff's Motion *in Limine* because the evidence Plaintiff's seeks to preclude is relevant and would be admissible at a trial on the merits.

Plaintiff filed a Motion *in Limine* to exclude evidence regarding:  (1) Plaintiff's performance reviews (ECF No. 35 at 6-11) and (2) Defendant's interview notes (ECF No. 35 at 11-15).  Under Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, a party asserting a fact may cite to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  Under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on

---

[14] The Court notes that Plaintiff cites Exhibit 18 (ECF No. 36-18) in opposition to Defendant's Motion for Summary Judgment as supporting his position that he was continuously engaged in protected activity from December 2010 until August 2011.  (ECF No. 36 at 23.)  There are several problems with this *sixty-one* page exhibit (ECF No. 36-18) without a specific page citation.  First, it is not properly authenticated to be admissible in opposition to summary judgment and thus, constitutes impermissible hearsay.  *Jaramillo*, 427 F.3d at 1314.  Second, the documents do not evince that the SBA individuals, Gutierrez and Eitel, who allegedly retaliated against Plaintiff by not selecting him for the Human Resource Specialist Position had knowledge of Plaintiff's purported continuous protected conduct.

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In moving for summary judgment on Plaintiff's claims, Defendant relied, in part, upon the declarations of Gutierrez (ECF No. 31-3) and Eitel (ECF No. 31-4). Under Rule 601 of the Federal Rules of Evidence, the Court presumes a person is competent to testify. Fed. R. Evid. 601. Plaintiff does not challenge the competency of either Gutierrez or Eitel.

Gutierrez personally supervised Plaintiff from June 2002 to February 2011 and was "responsible for preparing his annual performance reviews." (ECF No. 31-3 at ¶ 10.) Gutierrez completed written annual performance reviews for Plaintiff. (ECF No. 31-3 at ¶ 20.) Gutierrez completed performance reviews for 2008, 2009, and 2010. (ECF No. 31-3 at ¶¶ 24-25, 27.) Gutierrez attached "true and correct" copies of Plaintiff's 2008, 2009, and 2010 performance reviews to his declaration. (ECF No. 31-3 at ¶¶ 24-25, 27; ECF No. 31-24; ECF No. 31-25; ECF No. 31-26.) The Court finds that Plaintiff's 2008, 2009, and 2010 are properly authenticated and would be admissible at trial.

A Settlement Agreement between Plaintiff and Defendant stemming from earlier EEOC complaints became effective August 30, 2011. (*See* ECF No. 35-1 at ¶ 17.)  By virtue of the Settlement Agreement, *certain* aspects of Plaintiff's 2008, 2009, and 2010 performance reviews were to be changed and *certain* copies destroyed. (ECF No. 35-1 at ¶¶ 4-6.) Plaintiff's motion seeks to have the Court disregard performance reviews which he contends were to be modified or destroyed under the Settlement Agreement. (ECF No. 35-1 at ¶¶ 4-6.) The parties' Settlement Agreement, contrary to Plaintiff's argument, does not provide for the destruction of *all* copies of Plaintiff's performance reviews. (ECF No. 35-1 at ¶¶ 4-6.) Further, at the time

22

Gutierrez and Eitel made the decision to hire Marez for the Human Resource Specialist position, Plaintiff's 2008, 2009, and 2010 scores on his performance reviews were not changed to reflect the Settlement Agreement (because it had yet to be entered into) and therefore, their reliance upon his scores as identified in Defendant's exhibits submitted in support of its motion for summary judgment is relevant and appropriate to the Court's analysis.  *See* Fed. R. Evid. 401.

Plaintiff's motion also seeks to have the Court disregard interview notes with respect to the hiring process.  The basis for this request is that the SBA did not provide the notes in the course of the EEOC proceedings and that this failure somehow implicates the authenticity and usability of the records.

Gutierrez and Eitel interviewed both Plaintiff and Marez.  (ECF No. 31-3 at ¶ 46.) Gutierrez and Eitel took hand-written notes recording Plaintiff and Marez's responses to interview questions.  (ECF No. 31-3 at ¶ 48; ECF No. 31-4 at ¶ 33.)  Defendant submitted a "true and correct" copy of Gutierrez's interview notes for Plaintiff's interview.  (ECF No. 31-3 at ¶ 48; ECF No. 31-12.)  Defendant submitted a "true and correct" copy of Gutierrez's interview notes for Marez's interview.  (ECF No. 31-3 at ¶ 59; ECF No. 31-11.)  Defendant submitted a "true and correct" copy of Eitel's interview notes for Marez.  (ECF No. 31-4 at ¶ 33; ECF No. 31-11[15].)  Defendant submitted a "true and correct" copy of Eitel's interview notes for Plaintiff. (ECF No. 31-4 at ¶ 33; ECF No. 31-10.)  The Court finds that the interview notes submitted by Defendant are authentic, relevant, and would be admissible at trial.  *See* Fed. R. Evid. 901(b)(1).

---

[15] The Court notes that both Gutierrez and Eitel declared that the notes attached as Exhibit K (ECF No. 31-11) to Defendant's Motion for Summary Judgment are their own.  (ECF No. 31-3 at ¶ 59; ECF No. 31-4 at ¶ 33.)  The Court does not find this discrepancy to create a disputed material fact as their respective declarations provide context to their analysis of Plaintiff and Marez's interview performances.  (*See* ECF No. 31-3 at ¶¶ 47-60; *see* ECF No. 31-4 at ¶¶ 32-43.)

## V.  CONCLUSION

Based on the foregoing, the Court:

1.   DENIES Plaintiff's Motion for Partial Summary Judgment (ECF No. 27);

2.   GRANTS Defendant's Motion for Summary Judgment (ECF No. 31); and

3.   DENIES Plaintiff's Motion *in Limine* (ECF No. 35).

The Clerk shall enter judgment as set forth herein in favor of Defendant.

DATED this 10th day of October, 2014.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge